## CORNELIUS SULLIVAN

### *vs.*

### JOSEPH N. GREENE, and WASHINGTON COUNTY RAILROAD, trustee.

### LEWIS D. GREENE, claimant.

### Washington.    Opinion November 3, 1898.

*Trustee Process.    Claimant.    Void Assignment.    R. S., c. 86, § 79.*

A claimant in a trustee process should make full, true and explicit answers to all questions propounded to him in relation to the indebtedness to him of the principal defendant.

In this case the claimant of the funds in the hands of the trustee is the son of the defendant and he claimed the funds by virtue of an assignment from his father. The plaintiff claimed that the assignment was without consideration and fraudulent. It appearing, aside from the relations and conduct of the parties, that the evidence in support of the claimant's position, which came wholly from the claimant and defendant, was vague, indefinite and unsatisfactory, and that the claimant has not made full, true and explicit answers— he refusing to produce written evidence admitted by him to be in his possession—*it is held by the court*, that the assignment is void; that similar findings of the justice below are correct, and that the trustee be charged in the manner ordered by him.

On Exceptions by Claimant.

This was an action of debt on judgment brought by Cornelius Sullivan against Joseph N. Greene, in which the Washington County Railroad was summoned as one of the trustees. Lewis D. Greene appeared as a claimant for the funds disclosed by the Washington County Railroad in their disclosure duly filed. A hearing was held upon said disclosure before a justice of this court at the October term, 1897. The testimony offered in behalf of the claimant and in behalf of the alleged trustee was duly heard.

The court entered as of said October term, 1897, the following ruling and decision, to wit:

Cornelius Sullivan vs. Joseph N. Greene and trustees.

"Hearing before me upon disclosure of the Washington County Railroad, Lewis D. Greene, claimant, at Ellsworth, Dec. 2, 1897, by agreement of parties.

"It appears from the disclosure of the alleged trustee, the Washington County Railroad, that of the sum of $25,000, which the Washington County Railroad was to pay the principal defendant in accordance with the provisions of Chap. 90, Private and Special Laws of 1895, the sum of $19,000 has been paid to said Greene prior to the service of the trustee process, leaving the sum of $6000 unpaid. . . . .

"It further appears from the trustee's disclosure that the goods, effects and credits in the hands of the alleged trustee are claimed by a third person, to wit, Lewis D. Greene, by virtue of an assignment from the principal defendant to him. Leave having been previously granted to cite in the claimant, at the October term, 1897, the said Lewis D. Greene, appeared and was admitted as a party to the suit so far as respects the title to the goods, effects and credits in question. It appears that upon the 6th day of May, 1896, Jos. N. Greene made and executed a written assignment under seal to the said Lewis D. Greene of 'all claims I now have against the Washington County Railroad Company, a corporation duly established by law and now having its place of business at said Calais, for money due me, and particularly a claim for six thousand four hundred thirty-one dollars and fifty cents, and what-

ever interest may be due thereon; the said sum of six thousand four hundred thirty-one dollars and fifty cents with interest thereon, being now due me from said Washington County Railroad Company, in money.' And that on the 11th day of May, 1896, by a written instrument also under seal, the said Lewis D. Greene acknowledged the receipt of the assignment and accepted the same.

" The only question presented at the hearing was as to the validity of this assignment. The position of the claimant was that the assignment was made in good faith, for a full and adequate consideration and that it was consequently valid; while the plaintiff claimed that the assignment was made for the purpose of defrauding the defendant's general creditors, or at least this particular creditor, the plaintiff, who had recovered a verdict in the original suit against Jos. N. Greene, a few days before the date of the assignment.

"Except for this assignment, and the bill in equity above referred to which has been disposed of, there is no dispute as to the fact that the Washington County Railroad has in its hands at least six thousand dollars—the defendant claims more—belonging to Jos. N. Greene, the principal defendant.

" The position of the claimant is that this assignment was made as security for indebtedness of some $7000 owed by Jos. N. Greene to the claimant, which indebtedness is said to have arisen, in brief, in this way. It is claimed that in the year 1883, Lewis D. Greene took the contract to build what is known as the Mount Desert Branch of the Maine Central Railroad Company; that the profits of this enterprise amounted to about $50,000; that this sum belonged to Lewis D. Greene; that the amount was received by Jos. N. Greene for Lewis D. under a power of attorney and was subsequently loaned to the Grand Southern Railroad Company; that in 1893 Lewis D. Greene recovered judgment against the Grand Southern Railroad Company for the money previously loaned, and subsequently in the same year some $45,000 was collected by Jos. N. Greene for the claimant, still acting under a power of attorney for him. That of this sum Jos. N. Greene used for his own purposes, with the knowledge and assent of the claim-

ant, $7000, or more, for which sum he became indebted to the claimant and that this indebtedness continued up to and existed at the time of the assignment in question.

"Lewis D. Greene is the son of Jos. N. Greene and during all the period of time covered by the transaction above referred to he was an officer in the regular army of the United States. It is undoubtedly true that the contract for building the Mount Desert Branch of the Maine Central Railroad was in the name of the claimant. Was he the real contractor who built this road, or was his name merely used for some purpose?

"After carefully considering all the evidence, the conduct and relation of the parties, the position of the claimant and the fact that during the greater portion of the time while the Mount Desert Branch Railroad was being built, he was at his army post, the manner in which, from first to last, Jos. N. Greene treated and handled this money, giving no evidences of indebtedness and not keeping books of account, and from the vague, indefinite and unsatisfactory character of the evidence in support of the claimant's position, when such a claimant should make full, true and explicit answers to all questions propounded to him in relation to the indebtedness to him of the principal defendant, I am unable to believe that it was understood at the time between Jos. N. Greene and his son, that the latter was in fact—although he was in name —the contractor for the construction of this railroad.

"Upon the other hand I am forced to the conclusion that Jos. N. Greene was the real contractor and that his son's connection with such construction was merely nominal, simply a matter of form, and that his name was used by Jos. N. Greene for convenience for reasons which are not difficult to perceive.

"From this conclusion it necessarily follows, that the profits accruing from the construction of the Mount Desert Branch belonged to Jos. N. Greene; that the money loaned to the Grand Southern Railroad Company and subsequently recovered was the money of Jos. N. Greene, and that at the time of the execution of the written assignment, the basis of Lewis D. Greene's claim, Jos. N. Greene was not indebted to the claimant in any considerable

amount. This assignment was consequently void as to his creditor, the plaintiff in this suit.

"In accordance with my conclusions as above upon the facts involved, I therefore find that there is now and was at the time of the service of the trustee writ upon the Washington County Railroad, at least the sum of six thousand dollars in its hands belonging to Jos. N. Greene, the principal defendant, and that it should stand charged as trustee for the amount for which the plaintiff shall recover final judgment, not exceeding the amount of the ad damnum in the plaintiff's writ, that being less than the amount found to be in the trustee's hands as the property of the defendant.

"Trustee charged for the amount for which the plaintiff shall recover final judgment, but not exceeding the ad damnum in the writ in this suit.

"Trustee to have its taxable costs out of the balance in its possession."

To the foregoing ruling and decision, the said claimant excepted.

*J. F. Lynch and C. B. Donworth,* for plaintiff.

*Clarence Hale,* for Lewis D. Greene, claimant.

The assignment from Jos. N. Greene to Lewis D. Greene is valid and legal: (1.) It was based upon a full and ample consideration. (2.) As matter of law actual fraud must be affirmatively shown in order to defeat such assignment. *Laughton* v. *Harden,* 68 Maine, p. 213; *Dunlap* v. *Bournouville,* 26 Pa. St. 73; *Wheelden* v. *Wilson,* 44 Maine, 11; Wait, Fraud. Convey. § 218; 8 Am. & Eng. Ency. p. 767. (3.) As against subsequent creditors the assignment is valid even if based only on a good and equitable consideration. *Moore* v. *Thompson,* 32 Maine, 503; *Jones* v. *Roberts,* 65 Maine, p. 274; *Littlefield* v. *Smith,* 17 Maine, 327; *Ellis* v. *Higgins,* 32 Maine, 34. (4.) All the dealings between the parties show the elements of a valid assignment which the court should uphold. (See case of verbal assignments: *Simpson* v. *Bibber,* 59 Maine, 196.) *French* v. *Motley,* 63 Maine, p. 326; *Hamilton* v. *Hill,* 86 Maine, 137.

It cannot be intimated that claimant's position is trumped up for the purposes of this case, for the testimony shows that years ago

the same position was taken in the courts of New Brunswick, and finally sustained by the Privy Council of Great Britain. The position taken in the foreign courts has a direct bearing as showing good faith in this case. See *Hall* v. *Sands*, 52 Maine, 355; *Bailey* v. *Bailey*, 61 Maine, 364.

SITTING: PETERS, C. J., EMERY, HASKELL, WHITEHOUSE, STROUT, SAVAGE, JJ.

SAVAGE, J. In this case a controversy has arisen concerning the title to something over $6000 in the hands of one of the trustees, the Washington County Railroad Company. The defendant is Joseph N. Greene, and his son, Lewis D. Greene, has appeared and become a party as claimant of the funds by virtue of an assignment to him from the defendant, dated May 6, 1896, and prior to the service of process upon the trustee in this suit. The presiding justice before whom the cause was heard found that the assignment was void as to the plaintiff, a creditor of Joseph N. Greene, and ordered that the trustee be "charged for the amount for which the plaintiff shall recover final judgment, but not exceeding the ad damnum in the writ in this suit." The claimant excepted.

"Whenever exceptions are taken to the ruling and decision of a single justice as to the liability of a trustee, the whole case may be re-examined and determined by the law court, and remanded for further disclosure or other proceedings, as justice requires." R. S., c. 86, § 79. We have accordingly carefully examined the entire record in this case, in order to determine the correctness of the ruling complained of.

The allegations of the claimant, if any were filed, have not been printed as a part of the record. But an examination of the evidence of the claimant, taken by deposition at the instance of the plaintiff, shows that the position of the claimant is, that the assignment was made as security for an indebtedness of some $7000 said to be owed by Joseph N. Greene to the claimant, which indebtedness is said to have arisen, in brief, in this way: It is claimed that in the year 1883, Lewis D. Greene took the contract to build

what is known as the Mount Desert Branch of the Maine Central Railroad; that the profits of this enterprise amounted to about $50,000; that this sum belonged to Lewis D. Greene, the claimant; that the amount was received by Joseph N. Greene for Lewis D. Greene under a power of attorney, and was subsequently loaned to the Grand Southern Railroad Company; that in 1893 Lewis D. Greene recovered judgment against the Grand Southern Railroad Company for the money previously loaned, and subsequently, in the same year, about $45,000 was collected by Joseph N. Greene for the claimant, still acting under a power of attorney from him ; that of this sum, Joseph N. Greene used for his own purposes, with the knowledge and assent of the claimant, $7000 or more, for which sum he. became indebted to the claimant; and that this indebtedness continued up to and existed at the time of the assignment in question, and is the indebtedness attempted to be secured by such assignment.

The plaintiff contends that the assignment was without consideration, was expressly intended to defraud creditors, and particularly the plaintiff, and hence is void; that in fact the contract to build the Mount Desert Branch, though in the name of the claimant, was in reality the contract of Joseph N. Greene; that the claimant's connection with the contract was merely nominal and colorable; that he had no real interest in it, and that it was understood between him and his father that the latter was the real party; that, accordingly, the profits under the contract belonged to Joseph N. Greene; that the money loaned to the Grand Southern Railroad Company and subsequently recovered was the money of Joseph N. Greene; and that, therefore, Joseph N. Greene did not become indebted to the claimant by using any part of it. The justice below found substantially in accordance with the contentions of the plaintiff. If they are well founded, it needs no argument to show that the assignment to the claimant was without consideration, and fraudulent and void. The questions raised are purely questions of fact, and depend for their correct solution entirely upon the force and weight which may be properly given to the testimony of the claimant and his father.

The claimant in his deposition testifies that at the time the contract for the construction of the Mount Desert Branch was made, he was twenty-six years old, was then and has ever since remained an officer in the regular army; that his income was limited to the pay he drew from the government as second lieutenant; that his father, Joseph N. Greene, was then and for thirty years had been civil engineer, and promoter and contractor of railroads, and was the chief engineer and contractor for the Mount Desert Branch; that his recollection is that the contract was originally in the name of his father, but was subsequently assigned by him to the claimant during the construction of the road, and while the claimant was in Maine under a leave of absence from the army; that the object of the assignment was to provide for him and to place obstructions in the way of his step-mother, who had entered upon a " domestic war " with his father; that he was consulted by his father before the assignment, but not before the contract was originally made, as he recollects; that all the part he took in the work was during his four months' leave of absence from the army.

The claimant is in error in regard to any supposed assignment of the contract to him by his father. It appears that he, the claimant, was the original contractor, which he evidently has forgotten. He testifies that he was not present when the contract was made and did not sign it in person. It further appears from his testimony that he is uncertain in regard to the amount of money collected of the Grand Southern Railroad Company in the suit in his name, and the amount as recollected by him differs somewhat from that testified to by his father, who made the actual collection. He claims that of the money so collected, his father used for himself about $21,000, which he regards as in the nature of a loan to him; and that his father invested, in the name of the claimant, a large part of what he had not used. The claimant admits that the only knowledge he has of the investments and loans of his money made for him by his father, and of the amounts of his money used by his father, came by reports from time to time in his father's letters to him; that these reports came at various times since 1893, the year in which the money was collected of

the Grand Southern Railroad Company.   Upon inquiry, by plain-
tiff's counsel, he said that he had the correspondence; that he kept
copies of his own letters in reply; and being asked if he had his
father's letters transmitting his reports to him, he answered, "Yes,
I think I have them all."   Being asked to file the originals or
copies as a part of his deposition, he answered that he did not feel
disposed to furnish copies of these statements unless there was a
legal necessity for it, that it would be a great deal of work, for no
good that he could see.   Elsewhere he testified that the assignment
(for so he calls it) of the railroad contract by his father to him was
purely voluntary; that his father suggested it; and that there had
been no agreement on his part to reassign to his father at any time.
He also testified that there had been no understanding between him
and his father that the latter could use the moneys in his hands,
but that there was in his own mind a moral obligation that his
father should receive the benefits of that railroad contract so far as
it was necessary for his own comfort and maintenance, and that
the property, in case of his father's decease, would come to him.
He claims that he himself drew out and used about $3,000 of the
money collected from the Grand Southern Railroad Company.
He says that his father has given him no notes or other security
for the claimant's money which he had used.   Being asked to pro-
duce the letters of his father and copies of his own letters in reply,
touching the assignment before referred to, dated May 6, 1896, he
replied that he should prefer to consult counsel as to that before
he answered, and be given a little time to think about it; that it
was going to be a good deal of work to get each letter; that he
was willing to answer any categorical question he could of all the
letters he found.   At the conclusion of his examination he was
again asked to produce, on the following day, the correspondence
between him and his father touching the supposed assignment of
the contract, the collection of the $50,000 loaned to the Grand
Southern Railroad Company, the uses and purposes to which it had
been appropriated, and also touching the assignment in question,
dated May 6, 1896.   On the following day, November 23, 1897,
he appeared before the magistrate and produced certain statements

and exhibits, which are made a part of his deposition, but declined to produce the letters called for. He said he found that his correspondence prior to his coming to Hot Springs (three and one-half years before) was not then in his possession, being stored in Colorado. He said: "It would be impossible for me to file what is called for. Not being a party to this suit, I do not believe I am under legal obligations to produce the letters called for, even if the same were considered by the court material to the issues in this case, and therefore I respectfully decline to produce them." It will be noticed, however, that he does not state that any of the correspondence called for had taken place before he came to Hot Springs, or was then stored in Colorado.

On cross-examination by the counsel for his father, he testified that he came to Maine and assisted in the construction of the Mount Desert Branch at the invitation of his father; that at that time he expected to resign his commission in the army and continue to work with his father; that there was never any agreement between him and his father that the latter could use this fund, or the amount that he might use at any particular time; that his father had used about $21,000 of the money, mostly in the payment of personal obligations and for promoting the Maine Shore Line Railroad; that the assignment to him of the balance due from the Washington County Railroad Company was absolute; and that the money received was to be placed to the credit of his father on account of claimant's money which the father had used, which then amounted with interest to about $27,000.

The case shows that the father, in November, 1897, knowing that the son's deposition was then about to be taken, forwarded to him a statement which purported to show the several amounts of the money of the claimant which the father had used out of the proceeds of the judgment against the Grand Southern Railroad Company. The items, thirty-six in number, extend from November 1, 1893, to August 1, 1896, and amount, exclusive of interest, to nearly $23,000. But it appears that when the assignment of May 6, 1896, was made, it recited a consideration of $7000 only, and in his acceptance of it the claimant states it "is for and in considera-

tion of the sum of $7000 and interest thereon, and I hereby accept said assignment on account of his (Joseph N. Greene's) indebtedness to me." The language of the assignment and acceptance warrants the suspicion, at least, that the increase of the alleged indebtness from $7000 in May, 1896, to $23,000 in November, 1897, was an afterthought.

Joseph N. Greene in his testimony said that, at the time of the assignment, he owed his son "at least seven thousand dollars;" that the statement of money used, which he sent his son in November, 1897, was made from data which he had of money paid out and received after the recovery of judgment against the Grand Southern Railroad Company; that he made the statement up for the purpose of presenting it if called upon; that he sent his son a copy after he knew his deposition would be taken; that he had kept no book account with his son; that he was "the promoter, head of the enterprise, engineer and so forth" of the Mount Desert Branch, but had nothing whatever to do with and no interest in the contract; that although he did the greater part of the work in the construction of the Mount Desert Branch, the contract for which was in the name of his son, he made no agreement or arrangement whatever with his son for compensation for his services, and that he made no charge against him therefor, and that he had received no compensation except that he was allowed by his son to use out of the funds whatever was necessary for his support. It appeared that this plaintiff, Sullivan, recovered a verdict against Joseph N. Greene April 30, 1896, only seven days before the assignment in question was made, the present action being a suit on the judgment recovered in the former action.

Even this extended account of the testimony of the claimant and his father is but a brief and incomplete statement of the history of the transactions as narrated by them; but it is sufficient, we think, to show the true nature of their business relations.

To summarize:— A father, who for thirty years had been engaged in civil engineering and promoting and constructing railroads, takes a contract for the building of a railroad in the name of his son, on account of a "domestic war;" that son was then a

lieutenant in the army and little more than a boy. Out of that contract it is claimed that $50,000 profits were made for the son, but the son remembers so little of the contract that he is unable to remember absolutely whether he was the original contractor or an assignee. He thinks he was assignee, but in this his recollection is at fault. The father did practically all the work, got no compensation, and made no charge for his labor. The father received the money, and continued to handle and control it, loaned it to another railroad company in his son's name, sued for and recovered it, also in the son's name, used a part of the proceeds for his own use, without any previous understanding to that effect on the part of the son; and invested the remainder as he pleased, but still in the son's name. He gave no note or security. He kept no book account. He apparently treated the money as his own, but used the son's name for obvious purposes. If, as is claimed, the father reported to the son by letter from time to time, touching his use of the money and his investments, it may have been a fatal mistake on the part of the claimant to fail to produce those letters. They were called for by the plaintiff and could have been made a part of the claimant's deposition. Such letters, written in the ordinary course of business and showing that these parties treated the money as the property of the son, would have been entitled to great weight. The claimant declined to produce them. The inference is irresistible that there were no letters which would help the claimant. Seven days after a hostile verdict, Joseph N. Greene assigned to the claimant a balance of over $6,000 in the hands of the trustee, to secure an alleged indebtedness of $7,000. Eighteen months later he sent to his son a statement of his indebtedness to the son, amounting to nearly $23,000, undoubtedly to enable the latter to testify in regard to the disposition of the money, about which we are constrained to think he would otherwise have been entirely ignorant. It is true that Joseph N. Greene has used the name of his son in the collection and investment of the money recovered from the Grand Southern Railroad Company. Before that time he had been doing business in the name of his son, acting under a power of attorney. But it is true also, we think, that

both the son and the father have always treated the money collected as the money of the father, and that it was really the father's money.

Aside from the relations and conduct of the parties in this matter, the evidence in support of the claimant's position is vague, indefinite and unsatisfactory. A claimant should make full, true and explicit answers to all questions propounded to him in relation to the indebtedness to him of the principal defendant. *Thompson* v. *Reed*, 77 Maine, 425. We are unable to believe that it was ever understood between Joseph N. Greene and his son that the latter was in fact, although he was in name, the contractor for the construction of the Mount Desert Branch. Joseph N. Greene was the real contractor, the profits belonged to Joseph N. Greene, the money loaned to and recovered of the Grand Southern Railroad Company was the money of Joseph N. Greene. By the use of that money, Joseph N. Greene did not become indebted to the claimant, and therefore the assignment made to secure such an assumed indebtedness is void. Such were the findings of the justice below. It is the opinion of the court that those findings were fully justified by the evidence.

*Exceptions overruled.*